UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINA NORDQUIST,                    Case No. 21-12916

                    Plaintiff,          Gershwin A. Drain
v.                                      United States District Judge

COMMISSIONER OF SOCIAL                  Curtis Ivy, Jr.
SECURITY,                               United States Magistrate Judge

                    Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 12, 15)**

Plaintiff Christine Nordquist brings this action pursuant to 42 U.S.C. §

405(g), challenging the final decision of Defendant Commissioner of Social

Security ("Commissioner") denying her applications for Disability Insurance

Benefits and Supplemental Security Income under the Social Security Act.  This

matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the

Commissioner's cross-motion for summary judgment (ECF No. 15), and the

administrative record (ECF No. 8).

For the reasons below, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's

motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges her disability began on December 27, 2018.  She filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on May 1, 2019, and May 20, 2019, respectively.  Her applications were denied on September 19, 2019.

Following the denial, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  On February 27, 2018, ALJ Dennis Matulewicz held a hearing, at which Plaintiff and a vocational expert ("VE"), Michael Rosko, testified.  On August 21, 2020, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  Plaintiff later submitted a request for review of the hearing decision.  On November 17, 2021, the Appeals Council denied Plaintiff's request for review.  Thus, the ALJ's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 14, 2021.

### B.    Plaintiff's Medical History

The relevant portions of Plaintiff's medical record are discussed as required in the analysis portion of this report and recommendation.

## C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since December 27, 2018, the alleged onset date.   At

**Step 2**, the ALJ found that Plaintiff had the following severe impairments: obesity;

status post cervical fusion at C5-C6; pituitary tumor; lumbar degenerative disc

disease at L5-S1; history lumbar facet arthropathy with radiculitis and history of

spina bifida; hypertension; osteoarthritis of both knees; and headaches secondary

to surgical history.   At **Step 3**, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments.   **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and

determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) except lift 10 pounds
> maximally, 5 pounds frequently, and 10 pounds
> occasionally; sit 6 hours, stand 2 hours, and walk 2 hours
> in an eight-hour work day; never use ladder, scaffolds;
> occasionally use ramps or stairs, stoop, crouch, kneel,
> crawl, or balance; must avoid concentrated exposure to
> extreme heat, extreme cold, wetness, humidity, and
> vibrations; no reach over-the shoulder with the right or
> left upper extremity; who can frequently handle, finger,

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

and feel with the right or left upper extremity; avoid
concentrated exposure to dangerous, unprotected
machinery or work at unprotected heights; occasionally
bend, twist, turn at the waist; no right or left foot pedal
use; and occasionally push or pull with the right or left
upper extremity.

At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past

relevant work.  At **Step 5**, considering Plaintiff's age, education, work experience,

and RFC, the ALJ determined there were existing jobs in significant numbers

within the national economy that Plaintiff could perform, such as lobby attendant,

document scanner, and visual inspector.  The ALJ therefore concluded that

Plaintiff had not been under a disability, as defined in the Social Security Act,

since December 27, 2018, the date the application was filed.

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in

any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted

or can be expected to last for a continuous period of not less than 12 months."  42

U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the

Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment

that meets or equals the requirements of an impairment listed in the regulations; (4)

can return to past relevant work; and (5) if not, whether he or she can perform

other work in the national economy.  20 C.F.R. §§ 404.1520, 416.920.[2]  The

Plaintiff has the burden of proof at steps one through four, but the burden shifts to

the Commissioner at step five to demonstrate that there is work available in the

national economy the claimant can perform.  *Walters v. Comm'r of Soc. Sec.*, 127

F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the

burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing

*Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see

also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff asserts the ALJ erred at Step 3 when he found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 12, PageID.974).  Plaintiff also argues the ALJ failed to create an accurate RFC and erroneously found work because of the RFC.  (*Id.*).  The Court will address each argument in turn.

### i.    *The ALJ's Step 3 Analysis is Supported by Substantial Evidence*

Plaintiff contends that at Step 3 the ALJ's determination neglected to properly analyze or explain why Plaintiff's impairments do not meet or medically equal listing 1.04(A).  (*Id.* at PageID.976).  She contends the ALJ did not discuss the medical equivalence and merely concluded that "Listing 1.04 is not met because the file does not show nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with pseudoclaudication."  (*Id.*) (quoting ECF No. 8-2, PageID.45).

At the time, disorders of the spine required a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)

accompanied by sensory or reflex loss and, if there is involvement of
the lower back, positive straight-leg raising test (sitting and supine);

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).  Plaintiff argues her spinal

impairments either meet or medically equal listing 1.04 because she has "been

diagnosed with multiple spinal conditions including: lumbar spine degenerative

disc disease; facet arthropathy; annular fissure; and spina bifida; cervical spine disc

protrusion and history of fusion at C5–C6; and thoracic spine disc protrusions at

T5–T9[.]"  (ECF No. 12, PageID.978) (citing ECF No. 8-7, PageID.327, 342, 437,

877, 949).

An ALJ must "consider all evidence in [the claimant's] case record," 20

C.F.R. § 404.1520(a)(3) and, at Step 3 particularly, must "consider the medical

severity of [the claimant's] impairment(s)."  20 C.F.R. § 404.1520(a)(4)(iii).  As

the Court noted in *Sullivan v. Zebley*, for "a claimant to show that his impairment

matches a listing, it must meet all of the specified medical criteria.  An impairment

that manifests only some of those criteria, no matter how severely, does not

qualify."  492 U.S. 521, 530 (1990).  Moreover, "[w]hen a claimant alleges that

[s]he meets or equals a listed impairment, [s]he must present specific medical

findings that satisfy the various tests listed in the description of the applicable

impairment or present medical evidence which describes how the impairment has

such equivalency."  *Thacker v. Soc. Sec. Admin*., 93 F. App'x 725, 728 (6th Cir.

2004) (internal citation omitted).  Alternatively, an impairment "is medically

equivalent to a listed impairment . . . . if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). "If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 416.926(b)(2).

"A heightened articulation standard is not required at step three so long as the ALJ makes sufficiently clear the reasons for his listing determination, so as to allow meaningful review of his decision." *Burnett v. Comm'r of Soc. Sec.*, No. 1:19-CV-743, 2020 WL 6335035, at *3 (W.D. Mich. Oct. 29, 2020) (quoting *Marok v. Astrue*, No. 5:08-CV-1832, 2010 WL 2294056, at *3 (N.D. Ohio June 3, 2010)) (further citation omitted). Indeed, "it is well-settled that the Court may look at the rest of the ALJ's decision in order to determine whether substantial evidence supports the ALJ's Step Three determination." *Saad v. Comm'r of Soc. Sec. Admin.*, No. 2:20-CV-10136, 2021 WL 895754, at *4 (E.D. Mich. Feb. 19, 2021), *report and recommendation adopted*, No. 2:20-CV-10136, 2021 WL 872093 (E.D. Mich. Mar. 9, 2021) (further citation omitted).

Plaintiff makes one argument for the proposition that her spinal impairments meet or medically equal listing 1.04(A). Plaintiff's assertions of spinal disorders must be divided between those involving the lower back and those which do not.

As to whether there is evidence for lower back spinal disorder, Plaintiff acknowledges that for spinal disorders, if there is involvement of the lower back the disorder must be supported by a "positive straight-leg raising test" performed while sitting and supine.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).  The record includes multiple positive straight-leg tests, but the records do not specify if these tests were performed in a supine and sitting position, as is required for lower back spinal disorders.  (ECF No. 12, PageID.980).  Because a failure to meet a requirement precludes meeting the listing pursuant to the precedent in *Zebley*, Plaintiff cannot carry her burden to prove she has a lumbar spinal disorder as there is no indication of the required supine and sitting positive straight-leg raising test. As a result, the undersigned suggests Plaintiff has not presented the specific findings required for a lower back spinal disorder.

As to whether her impairment of her cervical spine meets the listing for spinal disorders, the ALJ concluded that "[l]isting 1.04 is not met because the file does not show nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis with pseudoclaudication."  (ECF No. 8-2, PageID.45).  Plaintiff has the burden of proving that she met all elements of listing 1.04(A), so she must prove that she has a disorder of the spine resulting in compromise of nerve root or spinal cord and (1) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss, (4)

sensory or reflex loss, and "if there is involvement of the lower back, positive straight leg raising test."  20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04(A). Nerve root compression is an element Plaintiff must prove in order to meet the listing for spinal disorders.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

Plaintiff's earlier imaging notes that the C5-C6 disc protrusion "*causes* mild compression of the thecal sac and right ventral cord."  (ECF No. 8-7, PageID.314) (emphasis added).  The ALJ noted that conservative therapy for the cervical disc disease failed, and Plaintiff underwent a cervical fusion in April 2019.  Following the fusion, the ALJ observed imaging showed intact hardware and the Plaintiff "was released to work *without restrictions* as of August 4, 2019."  (ECF No. 8-2, PageID.47) (emphasis added).  Plaintiff points to an August 2020 MRI as evidence of a reoccurrence of the nerve root compression noted on Plaintiff's earlier imaging.  The August 2020 MRI notes C5-C6 disc protrusion and "some mild T2 hyperintense signal within the cord *suggestive* of *either* cord edema versus compressive myelomalacia."  (ECF No. 8-7, PageID.949) (emphasis added). Plaintiff provides that "[c]ompressive myelopathy refers to neurological deficits that result from compression of the spinal cord. It most commonly occurs in the cervical spinal cord." (ECF No. 12, PageID.979).  The undersigned notes that Plaintiff has merely suggested nerve root compression is possible, even presuming that the protrusion is caused by the compressive myelomalacia and not by cord

edema.  When a claimant alleges that she meets a listed impairment, she must present specific medical findings that satisfy the various portions of the applicable impairment.  Nerve root compression must be proven in order to meet the listing for spinal disorders.  Plaintiff cannot do so on the record before the Court, which at most suggests nerve root compression is possible.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04(A).

As noted above, the failure to meet a requirement precludes meeting the listing pursuant to the precedent in *Zebley*.  The Eastern District of Michigan has consistently held that the requirements are conjunctive, and all must be met to meet the listing.  *See Brown v. Comm'r of Soc. Sec.*, No. 12-14506, 2013 WL 6537980, at * 11 (E.D. Mich. Nov. 18, 2013), *rep. & rec. adopted* 2013 WL 6538136 (E.D. Mich. Dec. 13, 2013); *see also Paul v. Comm'r of Soc. Sec.*, Case No. 2:17-cv-12391, 2018 WL 4500200 (E.D. Mich. Aug. 24, 2018); *Biehl v. Comm'r of Soc. Sec.*, Civ. No. 14–10293, 2015 WL 736366 (E.D. Mich. Feb. 20, 2015).  As to nerve root compression, the undersigned suggests Plaintiff has not presented a medical finding which can satisfy that nerve root compression is present.

Plaintiff, likewise, cannot carry her burned that she has a neuro-anatomic distribution of pain.  She asserts she experiences "neck pain that is accompanied by upper extremity pain, weakness, and numbness, as well as lower back pain that radiates into the legs."  (ECF No. 12, PageID.979).  Plaintiff cites only to her own

subjective complaints in support of the neuro-anatomic distribution of pain.  (ECF

No. 8-7, PageID.664; 670; 809; 873).  The ALJ explicitly found that Plaintiff's

"testimony is also inconsistent with the medical evidence" and discredited her

subjective reports of symptoms because the "discrepancies detract from her claim

of disability and do not support additional limitations above."  (ECF No. 8-2,

PageID.48).

The ALJ considered Plaintiff's physical therapy notes which "document far

greater activities [than] the claimant alleged at the hearing."  (ECF No. 8-2,

PageID.47).  The notes documented her "going to a corn maze on a weekend,

driving for long periods, running errands, some dog grooming, attending fair and

going on rides, climbing a rock wall, and spending time with her son's Cub Scout

troop."  (*Id.* at PageID.47).  The ALJ observed Plaintiff "admitted she was capable

of most household and work activities."  (*Id.*)  He considered that she "did

complain of increased pain with these activities and noted she struggled to walk

long durations without pain, but these activities undercut her testimony that she is

in bed most of the day.  Her admission that she has resumed ability for most of her

prior job activities indicates she is not unable to work."  (*Id.*).  The ALJ noted

Plaintiff's "treatment since the surgery is limited to conservative measures that

provide improved strength and pain control.  This is inconsistent with disabling

conditions or pain.  Finally, there is no persuasive medical opinion indicating she cannot work." (*Id.* at PageID.48).

Plaintiff does not challenge the ALJ's finding that her testimony diverges from the medical evidence.  Her subjective complaints (which the ALJ determined are inconsistent) cannot constitute a specific medical finding to satisfy that her alleged nerve root compression is characterized by neuro-anatomic distribution of pain.  The ALJ's findings are well supported and explained, so the deference given to an ALJ's credibility determination is proper here. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's evaluation of the subjective claims entitled to deference).

As to whether Plaintiff otherwise medically equals the listing, Plaintiff does not develop an argument that her impairments are "at least of equal medical significance to those of a listed impairment" as is required for medical equivalence. 20 C.F.R. § 416.926(b)(2).  For this proposition, Plaintiff again points to the August 2020 MRI and claims "Plaintiff's alleged disability is primarily based on the severity of her spinal impairments (and the residual symptoms) and the ALJ barely even discusses any of the pertinent evidence surrounding these issues." (ECF No. 12, PageID.981).  The evidence Plaintiff points to is her own subjective complaints of symptoms, which the ALJ addressed and found inconsistent.  (ECF No. 8-2, PageID.48).

The undersigned suggests Plaintiff has not carried her burden of establishing that she meets or medically equals listing 1.04(A) for the reasons discussed above. The foregoing constitutes substantial evidence to support the ALJ's listing decision that Plaintiff is not disabled.  Plaintiff's argument is that the ALJ overlooked the 2020 MRI and her reports of weakness, but Plaintiff does not attack the heart of the ALJ's rationale for concluding that she did not meet the listing—that Plaintiff's involvement in normal activities  undercuts her subjective reports of limitations. The Plaintiff points to her own subjective reports which the ALJ determined were inconsistent in an attempt to sustain her argument that she meets or medically equals the spinal impairment listing.  The undersigned is therefore not persuaded by her argument.  The foregoing constitutes substantial evidence to support the ALJ's analysis.

   ii.   *The ALJ's RFC Assessment is Supported by Substantial Evidence.*

Plaintiff's next argument is that the ALJ failed to create an accurate RFC and therefore erroneously found work at Step 5.  (ECF No. 12, PageID.982). Plaintiff appears to conflate the issue of whether the ALJ's RFC determination performed at Step 4 is supported by substantial evidence, with the issue of whether the ALJ posed an appropriate hypothetical question to the vocational expert ("VE") at Step 5.  (ECF No. 12, PageID.982).  While Plaintiff nominally refers to the VE's testimony, the error argued in the brief is that the ALJ failed to develop an

appropriate RFC at Step 4.  The ALJ is "charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of her residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotation marks and brackets omitted).

The ALJ determined Plaintiff had an RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except lift 10 pounds maximally, 5 pounds frequently, and 10 pounds occasionally; sit 6 hours, stand 2 hours, and walk 2 hours in an eight-hour work day; never use ladder, scaffolds; occasionally use ramps or stairs, stoop, crouch, kneel, crawl, or balance; must avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and vibrations; no reach over-the shoulder with the right or left upper extremity; who can frequently handle, finger, and feel with the right or left upper extremity; avoid concentrated exposure to dangerous, unprotected machinery or work at unprotected heights; occasionally bend, twist, turn at the waist; no right or left foot pedal use; and occasionally push or pull with the right or left upper extremity.

(ECF No. 8-2, PageID.46).  Plaintiff argues this assessment does not include the entirety of Plaintiff's documented limitations, namely the Plaintiff's inability to sit for a long time, limitations for the Plaintiff's cervical spine (flexion, extension, rotation, etc.), and the impact of the Plaintiff's medication side effects.  (ECF No. 12, PageID.984).

The ALJ considered that Plaintiff "testified she cannot sit, stand, or walk long durations and generally spends all day in bed."  (ECF No. 8-2, PageID.46). In deciding whether to incorporate Plaintiff's alleged limitations, the ALJ stated

"the record does not support limitation to less than a range of sedentary work or show that she is so impaired as to be disabled." (*Id.*).  The ALJ added "[t]he combined spinal issues warrant occasional postural requirements[.]" (*Id.*).  He noted Plaintiff possessed the "ability for extended driving and the increased pain complaints with activity suggest [sic] sedentary work is most appropriate." (*Id.*).  The ALJ observed that Plaintiff was released to work after the neck surgery without restriction and her treatment since surgery has been limited to conservative measures, which conflicts with disabling conditions or pain.  (*Id.* at PageID.47-48).

Plaintiff points primarily to her own subjective reports as evidence in support of the limitation regarding sitting, and, as already discussed, the ALJ found Plaintiff's testimony about her own limitations "inconsistent with the medical evidence" and discredited her subjective reports of symptoms because the "discrepancies detract from her claim of disability and do not support additional limitations above." (ECF No. 8-2, PageID.48).

Plaintiff does point to the opinion of Dr. Marlene Kennerly, who suggested Plaintiff can only sit for thirty minutes at a time.  (ECF No. 8-7, PageID.945-946).  That said, the ALJ addressed this opinion and concluded it was unpersuasive because the limitations opined diverge from the Plaintiff's physical therapy notes, which "document far greater activities [than] the claimant alleged at the hearing."

(ECF No. 8-2, PageID.47).  Because the ALJ found Dr. Kennerly's opinion

unpersuasive, this evidence does not support Plaintiff's argument.

The ALJ's decision cannot be reversed just because some other evidence

exists in the record that might support a different conclusion.  *McClanahan v.*

*Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the

Commissioner are not subject to reversal merely because there exists in the record

substantial evidence to support a different conclusion.... This is so because there is

a 'zone of choice' within which the Commissioner can act without the fear of court

interference.") (citation omitted).  The ALJ considered the other evidence in the

record and supportably declined to incorporate the other limitations regarding

sitting because he found Plaintiff's testimony inconsistent with the medical

evidence as a whole.

The same is true of Plaintiff's allegations on limitations of her cervical spine

(flexion, extension, rotation, etc.).  Plaintiff alleges the ALJ glossed over Plaintiff's

limited range of motion in constructing the RFC, but this argument fails.  The ALJ

stated that "work without concentrated exposure to extreme heat, cold, wetness or

humidity" was incorporated into the RFC to address "[a]ny impaired mobility

related to the surgery" by which the ALJ presumably meant Plaintiff's spinal

fusion because it is the only surgical intervention noted in the record.  (ECF No. 8-

2, PageID.47).  The ALJ added "[t]he combined spinal issues warrant occasional

postural requirements" and incorporated limitations into the RFC in the form of "no reach over-the shoulder with the right or left upper extremity; who can frequently handle, finger, and feel with the right or left upper extremity; avoid concentrated exposure to dangerous, unprotected machinery or work at unprotected heights; occasionally bend, twist, turn at the waist; no right or left foot pedal use; and occasionally push or pull with the right or left upper extremity." (ECF No. 8-2, PageID.46). Plaintiff again points to her own subjective reports and Dr. Kennerly's opinion about greater limitations than are incorporated in the RFC and, for the same reasons already discussed, the ALJ found Plaintiff's reports unavailing and discounted Dr. Kennerly's opinion as unpersuasive. Accordingly, the undersigned suggests substantial evidence supports the ALJ's findings, even if Plaintiff disagrees with those findings.

As to whether the ALJ considered the impact of Plaintiff's medication side effects, the ALJ specifically notes "[s]he has been prescribed pain medications and is therefore limited to work without ladders, scaffolds, or ropes, unprotected heights, or concentrated exposure to dangerous, unprotected machinery or vibrations." (ECF No. 8-2, PageID.47). As a threshold matter, the undersigned suggests the ALJ did consider the impact of Plaintiff's medication in constructing the RFC, even if the ALJ did not incorporate the greater limitations Plaintiff alleges are warranted. Moreover, "[a]llegations of a medication's side effects must

be supported by objective medical evidence." *Lorenz v. Berryhill*, No. 18-13793, 2020 WL 1818047, at *6 (E.D. Mich. Jan. 24, 2020) (further citation omitted). Plaintiff cites only to her function report and her testimony in the hearing in support of greater medication side effects, both of which are Plaintiff's subjective testimony and neither of which appears to be supported by any objective medical evidence. "[I]t is proper for the ALJ to consider side effects only where the alleged side effects are supported by objective evidence." *Id.* (citing *Farhat v. Sec. of Health & Hum. Servs.*, 1992 WL 174540, at *3 (6th Cir. July 24, 1991)). Thus, the ALJ was not required to consider the side effects of medication when determining the Plaintiff's RFC. The ALJ's failure to discuss Plaintiff's alleged side effects such as drowsiness, dizziness, blurred vision, diarrhea, headaches, and nausea does not warrant reversal or remand because these side effects are not supported by objective evidence.

For these reasons, the undersigned suggests the ALJ did not error in constructing Plaintiff's RFC.

### G.    Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

## II.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Hum. Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues

but fail to raise others with specificity will not preserve all the objections a party

might have to this Report and Recommendation.  *Willis v. Sec'y of Health and*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2),

any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 20, 2023                    s/Curtis Ivy, Jr.
                                          Curtis Ivy, Jr.
                                          United States Magistrate Judge